1  Amy M. Samberg
   Nevada Bar No. 10212
2  Joshua D. Cools
   Nevada Bar No. 11941
3  SNELL & WILMER L.L.P.
   3883 Howard Hughes Parkway, Suite 1100
4  Las Vegas, NV 89169
   Telephone: (702) 784-5200
5  Facsimile: (702) 784-5252
   Email: asamberg@swlaw.com
6  Email: jcools@swlaw.com

7  Steven R. Johnson (*Pro Hac Vice*)
   Stacy K. Shelly (*Pro Hac Vice*)
8  LANGHENRY, GILLEN, LUNDQUIST
   & JOHNSON, LLC
9  311 S. County Farm Road, Suite L
   Wheaton, IL 60187
10 Telephone: (630) 653-5775
   Facsimile: (630) 653-5980
11 Email: sjohnson@lglfirm.com
   Email: sshelly@lglfirm.com

12
   Attorneys for Plaintiffs
13 Steven Cohen Productions, Ltd. and
   St. Paul Fire & Marine Insurance Company
14 a/s/o Steven Cohen Productions, Ltd.

15              **UNITED STATES DISTRICT COURT**

16                   **DISTRICT OF NEVADA**

17  STEVEN COHEN PRODUCTIONS, LTD.,          CASE NO.: 2:12-cv-01995-GMN-CWH
    A Nevada Corporation, and ST. PAUL FIRE
18  & MARINE INSURANCE COMPANY, a
    wholly owned subsidiary of The Travelers    **STIPULATION AND ORDER TO**
19  Companies, Inc., as subrogee of Steven      **SUBSTITUTE PLAINTIFFS' REPLY IN**
    Cohen Productions, Ltd.,                    **SUPPORT OF MOTION FOR**
20                                              **SUMMARY JUDGMENT FOR AN**
                                                **AMENDED REPLY IN SUPPORT OF**
21              Plaintiffs,                     **MOTION FOR SUMMARY JUDGMENT**

22  vs.

23  LUCKY STAR, INC., a Tennessee
    corporation,
24
                Defendant.
25

26      The parties, by and through their respective counsel, submit the following stipulation:

27      On September 16, 2015, Plaintiffs filed their Reply in Support of Motion for Summary

28  Judgment [Dkt. No. 101]. Plaintiffs inadvertently filed the incorrect version of their Reply in

Support and request to substitute an Amended Reply in Support in place of the previously-filed Reply in Support. A copy of the Amended Reply is attached hereto as Exhibit A. The filing of the Amended Reply in support is timely, as the deadline for filing the Reply is today, September 18, 2015.

DATED this 18th day of September, 2015.    DATED this ___18th___ day of September, 2015.

SNELL & WILMER L.L.P.    Wood, Smith, Henning & Berman, LLP

By: _____    By: /s/ Elisa L. Wyatt
Amy M. Samberg, NV Bar No. 10212    _____
Joshua D. Cools, NV Bar No. 11941    Joel D. Odou, NV Bar No. 7468
3883 Howard Hughes Pkwy., Ste. 1100    Elisa L. Wyatt, NV Bar No. 13034
Las Vegas, NV 89169    7674 W. Lake Mead Blvd., Suite 150
    Las Vegas, NV 89128-6644

Steven R. Johnson (*Pro Hac Vice*)    Anthony DiPietra, Esq. (*Pro Hac Vice*)
Stacy K. Shelly (*Pro Hac Vice*)    Gladstone Weisberg, ALC
LANGHENRY, GILLEN,    4551 Glencoe Avenue, Suite 300
LUNDQUIST & JOHNSON, LLC    Marina del Rey, CA 75094
311 S. County Farm Road, Suite L
Wheaton, IL 60187    Attorneys for Defendant
    LUCKY STAR, INC.

Attorneys for Plaintiffs
Steven Cohen Productions, Ltd. and
St. Paul Fire & Marine Insurance
Company a/s/o Steven Cohen
Productions, Ltd.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

- 2 -

## **ORDER**

IT IS HEREBY ORDERED that Plaintiffs' previously-filed Reply in Support of Motion for Summary Judgment [Dkt. No. 101] is hereby stricken.

IT IS FURTHER ORDERED that leave to file Plaintiffs' Amended Reply in Support of Motion for Summary Judgment is hereby GRANTED and that the Amended Reply shall be substituted for the previous Reply.

IT IS FURTHER ORDERED that Plaintiffs' Amended Reply in Support of Motion for Summary Judgment is timely as it was filed before the September 18, 2015 deadline.

IT IS SO ORDERED.

**DATED** this 18th day of September, 2015.

Gloria M. Navarro, Chief Judge
United States District Court

Prepared and Submitted by:
SNELL & WILMER L.L.P.

Amy M. Samberg
Nevada Bar No. 10212
Joshua D. Cools
Nevada Bar No. 11941
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169

Steven R. Johnson (*Pro Hac Vice*)
Stacy K. Shelly (*Pro Hac Vice*)
LANGHENRY, GILLEN, LUNDQUIST
& JOHNSON, LLC
311 S. County Farm Road, Suite L
Wheaton, IL 60187

Attorneys for Plaintiffs
Steven Cohen Productions, Ltd. and
St. Paul Fire & Marine Insurance Company
a/s/o Steven Cohen Productions, Ltd.

22569316.1

# EXHIBIT A

# EXHIBIT A

1    Amy M. Samberg, Nevada Bar No. 10212
     Joshua D. Cools, Nevada Bar No. 11941
2    SNELL & WILMER L.L.P.
     3883 Howard Hughes Parkway, Suite 1100
3    Las Vegas, NV 89169
     Telephone: (702) 784-5200
4    Email: asamberg@swlaw.com
     Email: jcools@swlaw.com
5
     Steven R. Johnson (*Pro Hac Vice*)
6    Stacy K. Shelly (*Pro Hac Vice*)
     LANGHENRY, GILLEN, LUNDQUIST
7    & JOHNSON, LLC
     311 S. County Farm Road, Suite L
8    Wheaton, IL 60187
     Telephone: (630) 653-5775
9    Email: sjohnson@lglfirm.com
     Email: sshelly@lglfirm.com
10
     Attorneys for Plaintiffs
11   Steven Cohen Productions, Ltd. and
     St. Paul Fire & Marine Insurance Company
12   a/s/o Steven Cohen Productions, Ltd.

13                **UNITED STATES DISTRICT COURT**

14                      **DISTRICT OF NEVADA**

15   STEVEN COHEN PRODUCTIONS, LTD.,          CASE NO.: 2:12-cv-01995-GMN-CWH
     A Nevada Corporation, and ST. PAUL FIRE
16   & MARINE INSURANCE COMPANY, a
     wholly owned subsidiary of The Travelers
17   Companies, Inc., as subrogee of Steven        **PLAINTIFFS' REPLY IN SUPPORT OF**
     Cohen Productions, Ltd.,                       **MOTION FOR SUMMARY JUDGMENT**
18                                                  **PURSUANT TO F.R.C.P. 56**

19                 Plaintiffs,

20   vs.

21   LUCKY STAR, INC., a Tennessee
     corporation,
22
                   Defendant.
23

24          NOW COME the Plaintiffs, STEVEN COHEN PRODUCTIONS, LTD., a Nevada

25   Corporation, and ST. PAUL FIRE & MARINE INSURANCE COMPANY, a wholly owned

26   subsidiary of The Travelers Companies, Inc., as subrogee of Steven Cohen Productions, Ltd., by

27   and through its attorneys Snell & Wilmer L.L.P., and LANGHENRY, GILLEN, LUNDQUIST &

28

1  JOHNSON, LLC, and for its Reply in Support of their Motion for Summary Judgment pursuant
2  to FRCP 56 does state the following:

3  **INTRODUCTION**

4   SCP's Motion for Summary Judgment is premised upon two things – the validity of the
5  2011 Agreement for Services, and the fact that the equipment subject to the Agreement for
6  Services was "in use" as defined by Paragraph 12 therein at the time it was damaged. This
7  Motion is not aimed at the adjudication of the damages caused by the Defendant's breach, which
8  Plaintiffs' specifically reserved for a later date. Consequently, Plaintiffs will not address those
9  issues with respect to damages inexplicably addressed by LSI in its Response. (*See*
10  Document 79, Plaintiffs' Motion for Summary Judgment, ¶14)

11   LSI's Response attempts to muddy the waters regarding the validity of the 2011
12  Agreement for Services by arguing that: (1) because the Agreement for Services was unsigned,
13  the Court must look to evidence outside of the four corners of the document when considering its
14  formation and the legal effect thereof – conveniently never using the term "parol evidence"
15  despite spending many pages trying to convince the Court to consider exactly that; (2) SCP failed
16  to support its Motion for Summary Judgment with admissible evidence; (3) SCP failed to prove
17  its damages despite specifically reserving that issue; (4) the terms of the contract, which LSI
18  deems invalid, still act as a bar to SCP's claim; and (5) SCP is not a proper party to this lawsuit.

19   These arguments, some of which LSI has recycled from previous Motions, are without
20  merit. Thus, despite LSI's twenty-seven page attempt to obfuscate the dispositive issues, misstate
21  or ignore facts and applicable law, and repeat arguments this Court has previously found to be
22  without merit, it remains clear that the 2011 Agreement for Services was valid and enforceable
23  between SCP and LSI, and that the subject equipment was damaged while "in use." Accordingly,
24  the Court should grant the SCP's motion and award judgment as to liability in favor of the
25  Plaintiffs.
26  ///
27  ///
28  ///

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

# I. SCP'S MOTION FOR SUMMARY JUDGMENT IS SUPPORTED BY ADMISSIBLE EVIDENCE

## A. The Court should consider the Invoices from SCP and the checks from LSI in support of this Motion for Summary Judgment, as both are admissible under the Federal Rules of Evidence

LSI would like this Court to follow it down rabbit holes rather than address the irrefutable facts of this case, or explain its own actions following the tragic stage collapse on August 13, 2011 that caused extensive damage to equipment owned or supplied by SCP. Indeed, LSI's entire brief is devoted to misrepresentations of fact and law, and can in no way be considered a good faith effort at responding to SCP's Motion for Summary Judgment. Plaintiffs support their Motion for Summary Judgment, in part, with the 2011 Agreement for Services attached as Exhibit B and the invoices from SCP together with copies of LSI checks to SCP which reflect the 37 separate, timely payments made by LSI as specifically set forth in Exhibit C – Payment Schedule of the 2011 Agreement for Services. LSI objects saying such evidence is not authenticated, constitutes inadmissible hearsay, and cannot be used in support of this Motion. These claims are demonstrably false because the evidence is both self-authenticating, and though not necessary, the evidence has been authenticated by the testimony of Hellen Rollens, which LSI cites in support of its Response.

Contrary to LSI's assertion, there is no requirement that the invoices and checks from LSI be authenticated by affidavit or deposition testimony. Had LSI done even a scintilla of research, it would quickly have found that its argument regarding the admissibility of SCP's Exhibit B to its Motion for Summary Judgment was not well-grounded in either common law or the Federal Rules of Evidence, not to mention that this "evidence" was nevertheless authenticated by the deposition testimony of Hellen Rollens, a portion of which LSI attached in support of its Response.

As a prefatory matter, at summary judgment, a party does not necessarily have to produce evidence that would be admissible at trial. At the summary judgment stage, the focus is not on the admissibility of the evidence's form, but on the admissibility of the contents. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003); *Shepard v. Shinseki*, 2014 U.S. Dist LEXIS

- 3 -

Snell & Wilmer

LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

20562, *8 (D. Nev. Feb. 19, 2014). The court does not look to whether the evidence is currently presented in an admissible form, but instead whether it *could* be presented in an admissible form at trial. *Fraser*, 342 F.3d at 1037.

In *Fraser*, the Court considered whether the contents of a diary could be considered for summary judgment purposes. The Court found that the diary contents were recitations of facts within the plaintiff's knowledge and, depending on the circumstances, could be admitted into evidence in a variety of ways, including testimony as to the relevant portions from her personal knowledge pursuant to Federal Rule of Evidence 603, use of the diary to refresh her recollection under FRE 612, or as a recorded recollection under FRE 803(5). *Fraser*, 342 F.2d at 1037. As such, the Court was required to consider the contents of the diary – whether or not the diary itself was admissible – in the pending motion for summary judgment. *Id.*

Similarly, Steven Cohen and Hellen Rollens have been disclosed as potential witnesses in this case. Both can clearly testify about the contents of the invoices from SCP and the payments from LSI; in fact, they already have. (*See* Exhibit F, Deposition of Hellen Rollens, pp. 80-85; Exhibit G, Deposition of Steven Cohen, pp. 59, 63-64, 92). Even if the invoices and checks are not currently in admissible form, the contents of same clearly can be presented in admissible form at trial.

Assuming *arguendo* that the documents, themselves, were required to be admissible for this Court to consider them at the summary judgment stage, the invoices and the checks are self-authenticating. LSI's checks do not require extrinsic evidence of authenticity. *United States v. Pang*, 362 F.3d 1187, 1191 (9th Cir. 2004). Pursuant to FRE 902(9), as a negotiable instrument, a check is a species of commercial paper, and therefore self-authenticating. *Id.* LSI's checks constitute commercial paper under FRE 902(9) and are therefore self-authenticating.

SCP's invoices, while not self-authenticating under the commercial paper exception of FRE 902(9) are nevertheless authenticated under FRE 901(a), which requires "evidence sufficient to support a finding that the matter in question is what its proponent claims." FRE 901(a); *Las Vegas Sands v. Nehme*, 632 F.3d 526, 532-33 (9th Cir. 2011). However, the requirement that documents be authenticated through personal knowledge when submitted in a summary judgment

motion "is limited to situations where exhibits are introduced by being attached to an affidavit of a person whose personal knowledge is essential to establish the document is what it purports to be – that it is authentic." *Id.* at 533. Where, as in this case with the invoices from SCP, the documents are submitted to the Court without the need to set forth a basis for personal knowledge to authenticate them, the Court may consider alternative means of authentication under FRE 901(b)(4). *Id.*

Documents meet the self-authentication requirement where the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" support a finding that the item is what the proponent claims it is. FRE 901(b)(4). Under FRE 901(b)(4), documents can be authenticated by "review of their contents if they appear to be sufficiently genuine." *Las Vegas Sands*, 632 F.3d at 533. Here, a simple review of the invoices and checks reflect their genuineness. Indeed, LSI does not contest the fact that SCP issued the attached invoices, or that LSI paid them. (*See* Document 94, LSI's Response in Support of Motion for Summary Judgment, pp. 8-10). The appearance of each invoice is identical in form, notes it was issued with respect to the Sugarland 2011 Incredible Machine Tour, and corresponds to a specific payment period set forth in Exhibit C attached to the Agreement for Services, while each self-authenticating check issued by LSI correlates to a specific invoice from SCP. *See, e.g.*, *United States v. Pang,* 362 F.3d at 1191(holding that the government properly authenticated invoices under FRE 901(b) where it showed the invoices to be identical to other invoices in evidence, the numbers were in sequence with other invoices that were in evidence, and the invoices correlated dollar-for-dollar with the cancelled checks).

Plaintiffs need not establish a proper foundation for SCP's invoices and LSI's checks through personal knowledge; a proper foundation can rest on any manner permitted by FRE 901(a) or 902. *Pang,* 362 F.3d at 1191. Accordingly, Plaintiffs have established proper authentication for SCP's invoices and LSI's checks under FRE 901(a) and 902(9).

Furthermore, the invoices and checks are admissible under FRE 803(6) as records of a regularly conducted activity. The invoices and checks were made on the dates contained on the records by persons with knowledge at SCP and LSI and were clearly kept in the course of the

Snell & Wilmer

L.L.P.

LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1   regularly conducted business of SCP and LSI. Hellen Rollens personally attested to these

2   documents at her deposition; a fact which LSI must be aware of as they attached a portion of Ms.

3   Rollens' deposition and supporting exhibits to its Response, though not surprisingly, LSI

4   neglected to provide that particular section of her deposition.  Ms. Rollens testified that she

5   recalled receiving the invoices from SCP; that they were directed to her attention; and that she

6   forwarded them for payment.  (*See* Exhibit F, Deposition of Hellen Rollens, pp. 80, 83-85 and

7   Exhibit 7, attached hereto). Presumably, since LSI relied on Ms. Rollens' testimony in support of

8   its Response, it can have no objection to her as a source of credible and trustworthy information

9   regarding the invoices and checks at issue. *See* FRE 803(6)(E).

10        Thus, LSI's evidentiary objection to Exhibits B-1 and B-2 are not well-grounded in fact or

11   law. As has been LSI's *modus operandi* since the initial filing of this case three years ago, LSI

12   makes a sweeping technical defense unsupported by the record or applicable law, which requires

13   Plaintiffs to devote time and attention to explaining all of the reasons why LSI is incorrect. In the

14   end, this attempt to divert the Court from addressing the simple truths of this case will fail.

15   Plaintiffs hope this motion will result in a decision on the merits ending LSI's tactic of raising

16   meritless technical defenses that waste the time, money and resources of Plaintiffs and this Court.

17   **II.   THE AFFIDAVITS OF NEIL GIBSON, RICK LOCKE AND ROBERT**

18           **MICHAELIS COMPLY WITH THE REQUIREMENTS OF FRCP 56**

19        The affidavits of Neil Gibson, Rick Locke, and Robert Michaelis were attached in support

20   of Plaintiffs' Motion for Summary Judgment and cited to solely for the proposition that the

21   equipment was "in use" – i.e., unloaded from the transport vehicles and on the concert stage when

22   it collapsed.[1] As noted by Plaintiffs in the initial motion, the issues of damages, attorney's fees

23   and costs have been reserved pending the Court's resolution of this Motion which addresses

24   liability only. Nevertheless, LSI has raised objections to portions of all three affidavits, none of

---

[1] Plaintiffs inadvertently omitted Rick Locke's Report from his affidavit, attached to Plaintiffs' Motion for Summary Judgment as Exhibit D.  Nevertheless, the Report is part of the record in this case.  Rick Locke was deposed on May 21, 2014, at which counsel for LSI was present.  The Rick Locke report referenced in his affidavit was made Exhibit 1 to that deposition, and is attached hereto.  *See* Deposition of Rick Locke, pp. 1-5, 24, and Deposition Exhibit 1, attached hereto as Exhibit H.

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1  which, even if granted by the Court, impair Plaintiffs' assertion that the equipment was "in use"

2  as defined by the Agreement for Services at the time it was damaged.

3      FRCP 56(c)(4) permits the use of affidavits in evaluating a motion for summary judgment.

4  Indeed Rule 56(c)(4) states that "an affidavit…used to support a motion must be made on

5  personal knowledge, set out facts that would be admissible in evidence, and show that the

6  affiant…is competent to testify on the matters stated." As noted above, the affidavits need not be

7  in a form which would be admissible at trial in order for the Court to consider their contents in

8  support of a Motion for Summary Judgment. *Fraser v. Goodale*, 342 F.3d at 1036; *Block v. City*

9  *of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001). Thus, "hearsay statements for which there are

10 obvious witnesses who could be called at trial may be properly considered by the Court." *Maddin,*

11 *Inc. v. Allied Ins. Co. of Am.*, 2014 U.S. Dist LEXIS 171653, *2 (D. Nev. Dec. 9, 2014).

12 Consequently, hearsay is not an appropriate objection to the contents of an affidavit. The form of

13 the evidence is irrelevant, the question is whether the substance of the evidence is admissible.

14 *Id.*, *5.

15      It is without question – and LSI does not suggest otherwise – that Neil Gibson, Rick

16 Locke and Robert Michaelis are all competent witnesses who could be called to testify at trial.

17 LSI does not argue that the contents of the affidavits of Neil Gibson, Rick Locke and Robert

18 Michaelis are not the appropriate subject of admissible evidence, or that they could not be

19 testified to at trial.  Indeed, even if the physical reports of Rick Locke and Robert Michaelis were

20 found to be inadmissible at trial, both could clearly testify about their investigations from their

21 personal knowledge and use their reports to refresh their recollections. FRE 612; *Fraser*, 342 F.3d

22 at 1037.

23      Neil Gibson is a preeminent expert in his field, as set forth in his affidavit and his

24 deposition (which was relied upon by LSI in its Response) at some length. (*See, e.g.,* Exhibit I,

25 Deposition of Neil Gibson, pp. 30, 32-34 and Exhibit 2, attached hereto). His affidavit offers both

26 fact and opinion evidence. FRE 703 permits Mr. Gibson to base his opinions on facts or data that

27 he has been made aware of or personally observed. Pursuant to FRE 703, "if experts in the

28 particular field would reasonably rely on those kinds of facts or data in forming an opinion on the

subject, they need not be admissible for the opinion to be admitted." Furthermore, under FRE 705, "unless the court orders otherwise, an expert may state an opinion – and give the reason for it – without first testifying to the underlying facts or data," though they may be required to disclose the same on cross-examination.

LSI's objections to the affidavits of Neil Gibson, Rick Locke and Robert Michaelis are meritless. They are particularly off-putting in light of LSI's decision to attach an affidavit from Mike Vaden. Putting aside, for the moment, that Mr. Vaden was not disclosed in any of LSI's three FRCP 26 filings as a person likely to have discoverable information, nor offered for his deposition, it begs the question as to what Mr. Vaden's expertise might be such that it would be appropriate for him to evaluate LSI's legal obligations under Paragraph 12 of the Agreement for Services[2]. (*See* LSI's Exhibit D, ¶7-10, attached in support of its Response to Plaintiffs' Motion for Summary Judgment). LSI has, once again, sent the Plaintiffs and this Court off on a frivolous tangent which is unsupported by fact or law, and which ultimately has no impact on the issues before this Court.

## III. THE 2011 AGREEMENT FOR SERVICES BETWEEN SCP AND LSI IS VALID, UNAMBIGUOUS AND SHOULD BE ENFORCED AS WRITTEN

### A. Nevada law does not require either party to sign a written contract for it be valid, as they may assent to its terms and conditions by conduct evidencing acceptance

The 2011 Agreement for Services between SCP and LSI is valid, as evidenced by their performance of its material terms. LSI does not cite a single case that supports its contention that performance by both parties of the material terms of a written contract does not make that agreement valid, even absent the signature of both parties. Similarly, LSI does not cite a single case that stands for the proposition that the signature of one party is necessary to find the existence of a valid contract where both parties performed. Finally, SCP refers this Court to the April 6, 2012 letter from Leon Gladstone to counsel for SCP in the Indiana personal injury lawsuits wherein Mr. Gladstone seeks to tender the defense of claims against LSI to SCP's

---

[2] Mr. Vaden's affidavit sets forth that he is a certified public accountant and business manager, not a lawyer or a judge.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

Snell & Wilmer

LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1  insurance carrier pursuant to language in the 2011 Agreement. (*See* Exhibit L, Gladstone Letter,

2  incorporated by reference). The letter highlights the disingenuous nature of LSI's position in this

3  action that there is no valid contract between SCP and LSI.

4        The one case cited by LSI for the proposition that Nevada law "requires that at least one

5  party to sign a written agreement before its terms can be accepted," *United States Juice Corp. v.*

6  *JMF Group, LLC*, 2006 U.S. Dist LEXIS 49696 (D. Nev. July 18, 2006), says nothing of the

7  kind. In that case, the plaintiff, US Juice, alleges that it had an agreement to sell juice

8  manufactured by the Defendant, ABC. In its Complaint, US Juice alleged that it sent two written

9  agreements to ABC, both of which provided that ABC would indemnify US Juice for problems

10  arising out of ABC's product. After both parties began performing, US Juice received quality

11  complaints regarding the juice provided by ABC, and was forced to take back the faulty product,

12  incurring damages. US Juice sought indemnification from ABC, which ABC refused. US Juice

13  filed suit against ABC, and ABC moved to dismiss the Complaint, arguing that they had never

14  signed any version of an agreement with US Juice.

15        The District Court of Nevada denied the Motion to Dismiss because the court determined

16  U.S. Juice alleged sufficient facts to show that the Agreement is valid under the two prong test

17  requiring acceptance and reliance. *U.S. Juice at* *8-9. "US Juice alleges that on October 10,

18  2002, after receiving the October version of the written Agreement, [ABC] emailed [US Juice]

19  and indicated that the Agreement was satisfactory to ABC." *U.S. Juice* *9. "US Juice has alleged

20  facts which show ABC's reliance, such as their production of the product, distribution of it to US

21  Juice's customers, and acceptance of money in return from US Juice. US Juice's reliance is

22  shown by their ordering the product from ABC and paying for that product." *Id.*

23        What the case does not say is that to be effective, the written agreement had to be signed

24  by *at least* one party. Instead, the court focused on the conduct of the parties finding "that ABC

25  began producing the product and selling it to US Juice indicates that an Agreement was reached

26  and that negotiations were completed." *U.S. Juice* at *9-10. The court is silent about the

27  requirement of a signature. Thus, this case mirrors exactly what SCP did here when it sent the

28  2011 Agreement for Services to LSI and LSI took possession of, and paid for, the equipment. As

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1   noted by the District Court of Nevada, the important factors are acceptance and reliance, where

2   acceptance is determined by the conduct of the party, whatever might be that party's actual state

3   of mind.

4       Because it has no other avenue to avoid liability, LSI again attempts to manufacture a

5   phantom requirement that at least one party must sign the agreement, despite the ample evidence

6   demonstrating conduct by both SCP and LSI which establishes demonstrated acceptance and

7   assent to the terms of the 2011 Agreement for Services[3]. As the District Court of Nevada noted

8   earlier this year, the law in Nevada remains that the "parties 'may adopt a written contract, and

9   thus make it binding as though formally executed by both, without signing.'" *Cass, Inc. v.*

10  *Production Pattern and Foundry Co.*, 2015 U.S. Dist LEXIS 27801, *13 (D. Nev. Mar. 5, 2015)

11  (citing *U.S. Fidelity and Guarantee Co. v. Reno Electrical Works*, 183 P. 386, 387 (Nev. 1919)

12  and *Baran v. Venetian Casino Resort, LLC*, 2008 U.S. Dist LEXIS 74392, *2 (D. Nev.

13  September 26, 2008)). Indeed, "if a person accepts and adopts a written contract, even though it is

14  not signed by him, he is deemed to have assented to its terms and conditions and to be bound by

15  them." *Cass, Inc.*, *13 (citing *Reno Elec. Works*, 183 P. at 387).

16      In the case *sub judice*, LSI assented to the terms and conditions of the 2011 Agreement for

17  Services through its conduct -- seeking insurance for SCP's equipment[4] and making 37 separate

18  and distinct payments, in varied amounts, as required by the Agreement. Why would Mike

19  Vaden's office have authorized payments totaling more than $1.8 million be made to SCP if LSI

20  had not agreed to do so pursuant to the Agreement? (*See* Exhibit F, Deposition of Hellen Rollens,

21  pp. 84-85; Document 79-3, Exhibit B-2). Why would Leon Gladstone draft and send the April 6,

22  2012 tender letter if he did not believe there was a valid contract? (*See* Exhibit A, Gladstone

---

[3] Moreover, the depositions of Ms. Rollens and Ms. Gellman establish that it is common in the entertainment industry for the parties not to sign contracts. (*See* Exhibit F, Deposition of Rollens, pp. 45-46; Exhibit J, Deposition of Gail Gellman, pp. 72-73, attached hereto).

[4] The fact that LSI and FFIC ultimately reformed the 2011 policy long after the incident to provide different coverage than was provided in the 2010 policy (so FFIC could argue its policy is excess to the SCP policy) is actually evidence that LSI and FFIC understood LSI's obligations under the 2011 Agreement for Services immediately following the incident on August 13, 2011.

- 10 -

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1    Letter).  LSI's argument defies logic and common sense in an attempt to avoid its clear and

2    unequivocal obligations to SCP under the 2011 Agreement for Services.

3         Finally, Plaintiffs further fail to see how the addition of SCP's signature to the document

4    would have indicated LSI's acceptance of the terms any more than SCP performing all material

5    obligations under the contract and LSI making the 37 separate timely payments called for therein.

6    LSI's attempt to escape responsibility for its contractual obligations also ignores the fact that

7    under neither scenario was LSI required to sign the Agreement for Services in order for it to be

8    effective. Mike Vaden admits he read the agreement and initiated the process to obtain the

9    necessary insurance which Frost Specialty ultimately failed to obtain prior to the August 13, 2011

10   incident.  For this Court to rule that no valid contract existed under these facts would not only be

11   a travesty of justice for these Plaintiffs, it would serve as encouragement for others to look for

12   and assert hyper-technical defenses in an attempt to avoid clear contractual liability.  The tactics

13   of delay and assertion of meritless arguments utilized by LSI throughout this process should not

14   be allowed to continue and this Court should make clear to future litigants that such strategies

15   will be soundly rejected.

16   **B.      The terms of the 2011 Agreement for Services are unambiguous and it is not**
         **appropriate for the Court to consider parol evidence in construing the fully**
17       **integrated written contract validated by the performance of SCP and LSI**

18        Because the 2011 Agreement for Services is a valid and enforceable contract, the Court

19   need not look outside of the four corners of the Agreement to determine the applicable terms. LSI

20   spends many pages asking the Court to consider evidence outside of the 2011 Agreement to

21   determine the intent of the parties and their obligations – i.e., parol evidence, a term that LSI

22   tellingly does not use in the entirety of its twenty-seven page brief, despite arguing there are

23   questions of fact regarding what the parties "intended" by the terms of the Agreement. The reason

24   why LSI never uses the term "parol evidence" is easily discernable – because "extrinsic or parol

25   evidence is not admissible to contradict or vary the terms of an unambiguous written instrument

26   'since all prior negotiations and agreements are deemed to have been merged therein.'"  *Frei v.*

27   *Goodsell*, 305 P.3d 70, 73 (Nev. 2013) (citing *Kaldi v. Farmers Ins. Exch.,* 117 Nev. 273, 281

28   (2001)).

- 11 -

LSI would like the Court to consider extrinsic evidence regarding the intent of the parties prior to the validation of the 2011 Agreement on February 25, 2011, as evidenced by LSI's first payment to SCP as required by the express terms of the Agreement. However, the parol evidence rules forbids the Court from receiving evidence which would contradict the written contract. *Galardi v. Naples Polaris, LLC,* 301 P.3d 364, 368 (Nev. 2013).

As Plaintiffs set forth in their Motion for Summary Judgment, the terms of the 2011 Agreement for Service are clear and unambiguous. LSI, tellingly, does not seriously argue that the terms are ambiguous and capable of multiple interpretations, but instead suggests that the intent of the parties in arriving at the Agreement creates a question of fact for which extrinsic evidence is necessary. Such a position is flat-out wrong, and unsupported by Nevada law.

Parties to a written contract are bound by its conditions "regardless of their subjective beliefs at the time the agreement was executed." *Campanelli v. Conservas Altamira, S.A.*, 477 P.2d 870, 872 (Nev. 1970). Indeed, when a party to a written contract accepts a contract, he is bound by the stipulations and conditions expressed in it whether he reads them or not. *Id.* "Ignorance through negligence or inexcusable trustfulness will not relieve a party from contract obligations. He who…accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them, and there can be no evidence for the jury as to his understanding of its terms." *Id.*

Thus, LSI's argument that there was no "meeting of the minds" as to the specific terms of the agreement between SCP and LSI in 2011 and therefore, no contractual agreement because a question of fact exists concerning its terms, is crushed under the weight of the evidence that LSI performed under the terms of the 2011 Agreement by its acceptance of the equipment provided by SCP at every single tour stop, through payment of SCP's invoices, and (attempted) procurement of insurance. SCP relied on that performance (ultimately to its detriment) by providing LSI with $3.5 million worth of equipment. The alleged understanding of the parties prior to the execution of the 2011 Agreement is irrelevant because all prior negotiations were merged into and memorialized by the written 2011 Agreement. LSI has failed to set forth any legal reason that would allow this Court to consider parol evidence regarding the parties' understanding of the

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1  Agreement and their intent regarding it. The only reason LSI raises this argument is that it does

2  not like the result mandated by the enforcement of the plain language in Paragraph 12 of the 2011

3  Agreement for Services.

4        **C.**    **LSI's claims of fraudulent inducement are frivolous, unsupported by any**

5               **evidence, barred by applicable law, and contradicted by LSI's actions**

6        If the 2011 Agreement for Services is not valid and enforceable, LSI's actions are curious

7  and without logical explanation. LSI argues that it was tricked into the 2011 Agreement by fraud

8  or misrepresentation, and that parol evidence creates a question of fact sufficient to avoid

9  summary judgment. But, the affidavit of Mike Vaden attached in support of LSI''s Response to

10  this Motion for Summary Judgment, states, under oath, that he was the business manager for LSI

11  during 2010 and 2011. In Paragraph 4 he states that he reviewed the 2011 Agreement on behalf of

12  LSI as its business manager. (*See* Document 79-4, Affidavit of Mike Vaden). In Paragraph 5, he

13  states "after reviewing the contract to determine the agreement's insurance obligations, I

14  contacted Lucky Star, Inc.'s insurance broker, Frost Specialty, and requested that the company

15  obtained the insurance needed to cover the equipment that SCP provided to Lucky Star." (*See*

16  Document 79-4, Affidavit of Mike Vaden).

17        It is beyond dispute that LSI actually failed to procure the insurance specified by the 2011

18  Agreement prior to the August 13, 2011 incident. (*See* Exhibit K, Deposition of George Robert

19  Frost, p. 60). It was only after the stage collapse, when SCP put LSI on notice that it was making

20  a claim against LSI under Paragraph 12 of the Agreement, that LSI became aware that it had, in

21  fact, breached its obligation to procure the insurance for SCP's equipment as required by the 2011

22  Agreement for Services. (*See* Exhibit K, Deposition of Frost, pp. 64-70). LSI, through its

23  insurance broker (Frost Specialty), then went to a significant amount of trouble, essentially

24  begging FFIC to issue a policy after the fact that would provide LSI with insurance coverage for

25  the August 13, 2011 incident. (*See* Exhibit K, Deposition of George Robert Frost, pp. 64-70). If

26  the 2011 Agreement for Services was not effective at the time of the stage collapse for whatever

27  reason, why would LSI have needed to insure SCP's equipment? More importantly, after the

28  stage collapsed, both LSI and FFIC's attorney Leon Gladstone knew the 2011 Agreement for

Services was not signed by either party, but FFIC still agreed to reform LSI's policy, ***in 2012,*** after LSI's insurance broker, Robert Frost, flew from Nashville to San Francisco to beg FFIC to issue retroactive coverage for SCP's equipment. The only plausible explanation for the extraordinary efforts of Mr. Frost on behalf of LSI is that he knew, and LSI knew, LSI was obligated to obtain insurance under the 2011 Agreement just like Frost Specialty had done for LSI under the 2010 Agreement. Indeed, the actions of LSI, FFIC and their attorney, Leon Gladstone, once it was learned that the insurance required by the 2011 Agreement had not, in fact, been purchased, flies directly in the face of LSI's argument in this case (and FFIC's argument in Tennessee) that SCP misrepresented the contents of the 2011 Agreement for Services to LSI and fraudulently induced them to act in some manner.

It is difficult to understand how LSI and its counsel can, in good faith, argue that some alleged misrepresentation by SCP creates a question of fact sufficient to defeat summary judgment, particularly when LSI, through its new counsel, submitted the affidavit of Mike Vaden, which sets forth he was the business manager for LSI in 2010 and 2011, and that he reviewed the 2011 Agreement in "early 2011." (*See* Document 79-4, Affidavit of Mike Vaden, ¶4-5). LSI relies on the sworn declaration of Mike Vaden which establishes that he actually reviewed the insurance requirements of 2011 Agreement – not the alleged misrepresentation by Steve Cohen that the 2010 and 2011 Agreement were the same – and yet LSI has the temerity to assert that it should not be held to account for its obligations to SCP under the 2011 Agreement.

LSI's "claim" that it was fraudulently induced to act by SCP's apparently nefarious Mr. Cohen is irrelevant because Nevada law "precludes assertions of fraud when the alleged misrepresentation is contradicted by the parties' bargained-for terms." *Road & Highway Builders, LLC v. Northern Nev. Rebar, Inc.*, 284 P.3d 377, 380 (Nev. 2012). LSI argues that parol evidence of Cohen's alleged representation that the 2011 Agreement was the same as the 2010 Agreement should be considered by this Court. However, the reported "inducement" by Cohen cannot be something that conflicts with the 2011 Agreement's express terms, "as the terms of the contract are the embodiment of <u>all</u> oral negotiations and stipulations." *Id.* LSI's affirmative defense alleging fraud and misrepresentation does not express the intentions of the parties as set forth in

the 2011 Agreement. Accordingly, LSI has pled something which the law will not permit it to prove. *Id.*

Here, the alleged fraud is directly related to the subject of the 2011 Agreement for Services – that it was identical to the 2010 Agreement, creating identical obligations – and "where an alleged oral promise directly contradicts the terms of an express written contract, the parol evidence rule applies." *Id.* (citing *Sherrodd, Inc. v. Morrison-Knudsen Co.*, 815 P.2d 1135, 1137 (Mont. 1991)). LSI's contention that it is "entitled to a trial on its affirmative defenses" is simply wrong as a matter of law, and fails to create a question of material fact sufficient to defeat summary judgment in Plaintiffs' favor.

## IV. THE 2011 AGREEMENT FOR SERVICES NEEDS TO BE CONSTRUED AS A WHOLE AND NOT IN PIECEMEAL FASHION

LSI continues to protest, much like Ophelia, that once St. Paul was added to the caption, the relief available to Plaintiffs under the unambiguous terms of the 2011 Agreement was somehow altered by Paragraph 11 of the Agreement for Services. As Plaintiffs set forth at some length when LSI made this exact same argument in its first Motion to Dismiss, LSI's mischaracterization of Paragraph 11 improperly ignores Paragraph 12 as mere surplusage. (*See* Document 19, LSI's Motion to Dismiss; and Document 25, Plaintiffs' Response, incorporated by reference herein).

The 2011 Agreement for Services sought to logically allocate the various types of risk which might arise during Sugarland's 2011 concert tour between the parties, depending on the nature of the risk involved and where or when the incident occurred. Paragraph 12 is specifically directed at property damage to SCP's equipment while "in use" by LSI. Conversely, Paragraph 11 expressly relates to the general liability insurance policies that each of the parties agreed to purchase to protect against claims by third-parties (like the personal injury claims in Indiana that were settled in December of 2014) and not claims for property damage to the Equipment specifically referenced in Paragraph 12. As LSI failed to do in its prior motion with this Court, it again neglects to include in this Response the entirety of Paragraph 11, which reads as follows:

/ / /

Snell & Wilmer

L.L.P.

LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

11. **Liability Insurance.** (a) SCP agrees that at its sole expense, it will procure and will maintain in full force and effect so long as this Agreement shall remain effective, a Commercial General Liability Insurance policy with minimum limits for bodily injury and property damage of $1,000,000 each occurrence and $2,000,000 in the aggregate. Upon request, SCP shall provide Producer a Certificate of Insurance evidencing the same.

(b) Producer agrees that at its sole expense, it will procure and will maintain in full force so long as this Agreement shall remain effective, a Commercial General Liability Insurance Policy with minimum limits for bodily injury and property damage of $1,000,000 each occurrence and $2,000,000 in the aggregate. **Producer shall provide SCP a Certificate of Insurance naming Steven Cohen Productions, LTD as Additional Insured.** (Emphasis added).

Any certificate provided hereunder shall also provide that such insurance will not be cancelled without first giving, as applicable, SCP or Producer thirty (30) days prior written notice. Neither SCP nor Producer shall be liable to the other or to any insurance company (by way or subrogation or otherwise) insuring such party for the death of or injury to any person or for any loss or damage to any tangible property, or any resulting loss of income, or losses under worker's compensation laws and benefits, even though such loss or damage might have been occasioned by the negligence of such party, its agents or employees, if and to the extent that any such loss or damage is covered by insurance benefitting such party or was required to be covered by insurance benefitting such party pursuant to this Paragraph 11.

(*See* Doc. 78-1; 2011 Agreement for Services,)

Like any contract, it is important for this Court to interpret the *entire* Agreement for Services in order to effectuate the principle or main purpose of the parties. 11 Richard A. Lord, *Williston on Contracts* § 32.9 (4th ed. 2012). LSI posits that Paragraph 11, which is specifically limited on its face to those losses covered by the liability insurance policies to be purchased by LSI and SCP, somehow acts to defeat the Plaintiffs' claim. However, if LSI really believed that Paragraph 11 defeated Plaintiffs' claim, it would have filed a counter-Motion for Summary Judgment, arguing the same, as under Nevada law, the interpretation of an integrated written contract presents a question of law. *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). LSI's failure to do so is telling and belies its arguments in the Response. Contract interpretation should be reasonable and not unduly harsh. *Id.* (citing *Williston on Contracts* §32.11). Although an individual clause may be read alone to have no ambiguity, the contract must be read as a whole in order to give a reasonable and harmonious meaning and effect to all its provisions. *National*

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1  *Union Fire Insurance Company of the State of Pennsylvania, Inc. v. Reno's Executive Air, Inc.*,

2  682 P.2d 1380, 1383 (Nev. 1984).

3      In this case, LSI blatantly ignores the plain language in Paragraph 12 of the 2011

4  Agreement in a specious attempt to escape its obligations under the Agreement. When construing

5  the 2011 Agreement between SCP and LSI, the Court must avoid negating any contract provision

6  and read the contract as a whole. *Road and Highway Builders,* 284 P. 3d at 380. LSI would have

7  this Court ignore the very logical and common sense agreement to allocate the risk of damage to

8  the equipment provided by SCP to LSI for use during the 2011 concert tour. It is beyond question

9  that the loss before this Court occurred to the specified equipment while it was "in use" as that

10  term is defined in the 2011 Agreement. Accordingly, when the Court construes the contract as a

11  whole, it follows logically that LSI agreed to be responsible for the damage caused to the

12  equipment at issue.

13      LSI's self-serving construction of the 2011 Agreement exempts LSI from liability to SCP

14  for **any** claimed loss or damage to any tangible property that was covered by "insurance"

15  generally or that was supposed to have been covered by any insurance purchased by SCP,

16  negating Paragraph 12 in its entirety. Simply stated, LSI's assertion does not comport with the

17  requirements of Nevada law, as such an interpretation requires the Court to ignore the common

18  sense allocation of risk agreed to by the parties in Paragraph 12, and also to negate the specific

19  provision in Paragraph 12 requiring LSI to maintain property insurance in the specific amount of

20  $3,258,000 on SCP's Equipment while it is "in use" by LSI. In other words, to accept LSI's

21  argument requires this Court to ignore the plain language of the Agreement.

22      LSI strategically asserts that it purchased insurance to protect the equipment as required in

23  Paragraph 12 long after the incident at issue. LSI believes the post-accident purchase of insurance

24  somehow magically fulfils its contractual obligations to SCP despite the fact that its insurer

25  (FFIC) is simultaneously arguing in Tennessee that the policy does not cover the equipment or, in

26  the alternative, it provides excess only coverage. If LSI's coverage is illusory, how could they be

27  deemed to have met their contractual obligations? No reasonable interpretation of the 2011

28  Agreement would find that it was the intent of SCP to require LSI to be responsible for the

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1   equipment while "in use" on the one hand, while on the other hand, allowing LSI off the hook

2   because LSI chose to purchase an insurance policy that does not provide coverage for the risk LSI

3   accepted in the first sentence of Paragraph 12. Instead, the only logical conclusion for this Court

4   is that LSI must be held directly responsible for the damaged equipment as stated in

5   Paragraph 12, whether or not it purchased insurance that covered the subject equipment.

6       Furthermore, this Court should take specific note that the plain language of the 2011

7   Agreement requires the parties to purchase different amounts of insurance coverage in

8   Paragraph 11 and Paragraph 12. To paraphrase Occam's razor, the simplest of competing theories

9   is preferred to the more complex, and thus the only reasonable explanation for this difference is

10  that the parties understood the different types of risks involved in the 2011 concert tour and their

11  agreement addressed each type of risk with different and specific requirements for insurance to be

12  purchased by each of the parties to the agreement.

13      Paragraph 11, both by its heading and its plain language, is specifically directed only to

14  the liability insurance policies to be purchased by LSI and SCP during the 2011 concert tour.

15  "Specific words will limit general words if it appears from the whole agreement that the parties'

16  purpose was directed solely toward the matter to which the specific words or clause relate."

17  *Williston on Contracts*, §32.10. Thus, this Court must conclude that the general waiver language

18  in Paragraph 11 is limited to those circumstances where the Commercial General Liability policy,

19  that each party was required to maintain, is implicated. Construing the contract in the manner

20  suggested by LSI would eliminate and give no effect to other provisions of the contract,

21  specifically but not exclusively Paragraph 12, that were clearly contemplated by the parties at the

22  time that the 2011 Agreement was executed.  It is well-settled that a contract must be read and

23  interpreted as a whole, giving effect to all of its provisions and treating none of them as mere

24  surplusage. *Road and Highway Builders*, 284 P.3d at 380. Quite simply, Plaintiffs' position

25  before this Court does exactly that, while LSI's construction can only succeed if all of

26  Paragraph 12, and most of Paragraph 11, are disregarded and given no legal effect.

27  / / /

28  / / /

V. **THE COURT RETAINS PENDENT JURISDICTION OVER SCP'S CLAIMS**

Plaintiffs are further surprised that LSI continues to assert this Court has no jurisdiction over SCP's claims. As noted by LSI, this Court recently granted LSI's Motion to Dismiss pursuant to FRCP 12(h)(3), finding that SCP's claim fails to satisfy the amount in controversy requirement of 28 U.S.C. §1332, but that the addition of St. Paul, the subrogee and an additional real party in interest pursuant to FRCP 17, cured that deficiency. Consequently, this Court retains supplemental jurisdiction over SCP's pendent claim pursuant to 28 U.S.C. §1367, as noted by Plaintiffs in their recent Brief in Opposition to Transfer to Tennessee. LSI fails to address the existence of 28 U.S.C. §1367, or explain why this Court does not retain pendent jurisdiction over SCP's claim.

LSI's response also fails to evidence any understanding of the Court's Order with respect to the addition of St. Paul as a party Plaintiff. The Court's Order of June 5, 2015 did not substitute St. Paul for SCP, but simply added St. Paul. (*See* Document 77, June 5, 2015 Order, pp. 7-8). In addition, LSI's Motion to Dismiss SCP was granted without prejudice, and SCP was specifically granted leave to file a second amended complaint adding St. Paul to cure the jurisdictional defect. (*See* Document 77, June 5, 2015 Order, pp.7-8). There is absolutely no basis whatsoever in the Court's June 5, 2015 Order, or in the applicable federal law, why this Court does not continue to retain pendent jurisdiction over SCP's claim, or why LSI would be entitled to summary judgment for it. The Court's June 5, 2015 Order is very clear and LSI's arguments arising from its misunderstanding of its contents should be swiftly rejected.

## **CONCLUSION**

There are no genuine disputed issues of material fact in this case that would prevent this Court from entering summary judgment on liability in favor of Plaintiffs, SCP and St. Paul. An enforceable contract existed between LSI and SCP and the terms of the contract between LSI and SCP are clear and unambiguous. It is further undisputed that the Equipment at issue was damaged or destroyed while it was "in use" by LSI at the time of the occurrence on August 13, 2011, and that the contract makes LSI responsible for any such damage to the Equipment.

///

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

SCP authorized St. Paul to file suit against LSI in the name of SCP to recover all monies paid by St. Paul to or on behalf of SCP for damages arising from the August 13, 2011 stage collapse claim, and St. Paul stands in the shoes of its insured SCP for purposes of this action against LSI. As St. Paul has, pursuant to its policy of insurance with SCP, paid all sums due and owing to or on behalf of SCP under the policy issued to it, St. Paul has the legal and equitable right to seek recovery of any and all monies paid to or on behalf of SCP, from LSI pursuant to LSI's obligations under the 2011 Agreement for Services. SCP, in turn, has a right to recover from LSI the amount of money it did not recover from its insurer pursuant to its insurance deductible.

Accordingly, SCP and St. Paul are entitled to summary judgment on liability against LSI as a matter of law.

WHEREFORE, for all the reasons set forth herein, the Plaintiffs, STEVEN COHEN PRODUCTIONS, LTD., a Nevada Corporation, and ST. PAUL FIRE & MARINE INSURANCE COMPANY, a wholly owned subsidiary of The Travelers Companies, Inc., as subrogee of Steven Cohen Productions, Ltd., respectfully request this Honorable Court enter an Order in favor of Plaintiffs and against Defendant, LUCKY STAR, INC., granting this Motion For Summary Judgment on liability only and further request this Court set this matter for prove-up with regard to the damages, costs and expenses, including reasonable attorney's fees, on a date and at a time to be determined by this Court.

DATED this 18th day of September, 2015.

SNELL & WILMER L.L.P.

By: _____
Amy M. Samberg, Nevada Bar No. 10212
Joshua D. Cools, Nevada Bar No. 11941
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169

Steven R. Johnson (*Pro Hac Vice*)
Stacy K. Shelly (*Pro Hac Vice*)
LANGHENRY, GILLEN, LUNDQUIST
& JOHNSON, LLC
311 S. County Farm Road, Suite L
Wheaton, IL 60187
Attorneys for Plaintiffs

- 20 -

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

## CERTIFICATE OF SERVICE

I, the undersigned, declare under penalty of perjury, that I am over the age of eighteen (18) years, and I am not a party to, nor interested in, this action. On this date, I caused to be served a true and correct copy of the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56** by the method indicated below:

| XXXXX | Electronic Service (CM/ECF) | _____ | Federal Express |
| _____ | U.S. Mail | _____ | U.S. Certified Mail |
| _____ | Facsimile Transmission | _____ | Hand Delivery |
| _____ | Email Transmission | _____ | Overnight Mail |

and addressed to the following:

Joel D. Odou, Esq.
Nevada Bar No. 7468
Elisa L. Wyatt, Esq.
Nevada Bar No. 13034
Wood, Smith, Henning & Berman, LLP
7674 W. Lake Mead Blvd., Suite 150
Las Vegas, NV 89128-6644
Telephone: (702) 251-4100
Facsimile: (702) 251-5405
Attorneys for Defendant
LUCKY STAR, INC.

Anthony DiPietra, Esq. (*Pro Hac Vice*)
Gladstone Weisberg, ALC
4551 Glencoe Avenue, Suite 300
Marina del Rey, CA 75094
Telephone: (310) 821-9000
Facsimile: (310) 775-8775
Attorneys for Defendant
LUCKY STAR, INC.

DATED this 18th day of September, 2015.

_____
An Employee of Snell & Wilmer L.L.P.

22566383.1

- 21 -