**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

STEVEN COHEN PRODUCTIONS, LTD., A Nevada Corporation, and ST. PAUL FIRE & MARINE INSURANCE COMPANY, a wholly owned subsidiary of The Travelers Companies, Inc.,

    Plaintiffs,

vs.

LUCKY STAR, INC., a Tennessee Corporation,

    Defendant.

Case No.: 2:12-cv-01995-GMN-CWH

**ORDER**

Plaintiffs Steven Cohen Productions, Ltd. ("SCP") and St. Paul Fire and Marine Insurance Company, a wholly owned subsidiary of Travelers Insurance Company ("St. Paul"), brought this action against Defendant Lucky Star, Inc. ("LSI") alleging breach of contract. (Second Am. Compl. ("SAC") ¶ 1, ECF No. 78). LSI subsequently filed its First Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (First MTD 1:23–24, ECF No. 19). As an alternative to dismissal, LSI requested a transfer of venue in light of pending parallel litigation in the Middle District of Tennessee. (*Id.* 3:10–13). The Court denied LSI's request for lack of a "sufficient basis for the Court to order transfer." (Order 5:6–7, ECF No 42). Consequently, the Court later requested supplemental briefing on "why venue of this case should not be transferred to the Middle District of Tennessee for consolidation with case number 3:12-CV-00851." (Order 8:20–21, ECF No. 77). For the reasons discussed below, the Court orders this case be transferred to the Middle District of Tennessee pursuant to 28 U.S.C. § 1404(a).

## I. BACKGROUND

SCP is a Nevada corporation in the business of providing specialized equipment to the music industry for live concert productions. (SAC ¶ 1, ECF No. 78). LSI is a Tennessee corporation that does business as the pop and country music band known as "Sugarland." (*Id.* ¶ 4). LSI is insured by Fireman's Fund Insurance Company ("Fireman's Fund"), and SCP is insured by St. Paul. (*Id.* ¶¶ 2, 20). In their Second Amended Complaint ("SAC"), SCP and St. Paul (collectively "Plaintiffs") allege a claim for breach of contract against LSI arising from LSI's failure to compensate SCP for equipment damage pursuant to the terms of a 2011 Agreement for Services ("Agreement") between SCP and LSI. (*Id.* ¶ 20; *see also* Agreement, ECF No. 78-1).

Pursuant to the Agreement, and in connection with the "Sugarland 'The Incredible Machine' Tour 2011," SCP provided lighting equipment, lighting services, video reinforcement, and other related services to LSI. (SAC ¶ 7). On August 13, 2011, SCP's equipment was damaged during a concert at the Indianapolis State Fair. (*Id.* ¶ 13). After the incident, SCP submitted an insurance claim with St. Paul and was reimbursed for the loss of the equipment. (*Id.* ¶ 22). SCP subsequently demanded payment from LSI pursuant to the Agreement, and LSI refused to provide compensation. (SAC ¶ 15).

On August 17, 2012, Fireman's Fund filed suit against St. Paul in the United States District Court for the Middle District of Tennessee (the "Tennessee Action"). (*See* Ex. B to First MTD, ECF No. 19-2). In the Tennessee Action, Fireman's Fund alleges that it has no obligation under the insurance policy to pay for any loss or damage to SCP's equipment until after SCP utilizes its policies with St. Paul. (*Id.* ¶ 22). Conversely, St. Paul maintains that Fireman's Fund's obligation is primary according to the Agreement, and that Fireman's Fund must pay for the loss and damage to the equipment. (*Id.*). At the time of this Order, cross-motions for summary judgment filed by St. Paul and Fireman's Fund have been held in

abeyance pending the Court's decision in this case. *See Fireman's Fund Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, M.D. Tenn., 3:12-cv-00851.

On November 16, 2012, SCP initiated the present action for breach of contract, basing jurisdiction on the diversity of the parties pursuant to 28 U.S.C. § 1332. (Am. Compl. ¶ 3, ECF No. 9). LSI subsequently filed a series of motions to dismiss SCP's Amended Complaint. (*See* ECF Nos. 19, 51, 73). In LSI's Third Motion to Dismiss, LSI argued that without St. Paul as a party, SCP failed to meet the necessary amount in controversy requirement. (Third MTD 10:4–10, ECF No. 73). The Court agreed and granted LSI's Third Motion to Dismiss, but allowed SCP to amend the complaint to include St. Paul and resolve the subject matter jurisdiction issue. (Order 7:8–24, ECF No. 77). Further, the Court requested that the parties submit supplemental briefing on whether the case should be transferred to the Middle District of Tennessee. (*Id.* 8:18–21). Shortly thereafter, SCP and St. Paul filed the SAC adding St. Paul as a plaintiff, and both Plaintiffs as well as LSI filed the requested briefing. (SAC, ECF No. 78; *see also* Pls.' Opp'n to Transfer, ECF No. 80; LSI's Supp. for Transfer, ECF No. 81).

## II. <u>LEGAL STANDARD</u>

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Determining whether to transfer an action calls for "an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (*quoting Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The Court considers multiple factors in determining whether transfer is appropriate. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). These factors include: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the

chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof. *Id.* at 498–99 (citing *Stewart*, 487 U.S. at 29–31; *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)).

Additionally, "[t]he feasibility of consolidation is a significant factor in a transfer decision, although even the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *A.J. Indus., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir. 1982). Likewise, "the presence of a forum selection clause is a significant factor in the court's § 1404(a) analysis." *Jones*, 211 F.3d at 499. "Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge." *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

**III.     DISCUSSION**

The Court must first determine if the case "might have been brought" originally in the proposed transferee district. *See* 28 U.S.C. § 1404(a). Although LSI is a Tennessee corporation, SCP disputes that venue is proper in the Middle District of Tennessee in light of the Agreement's mandatory forum selection clause naming Nevada as the appropriate venue. (Pls.' Opp'n to Transfer 13:11–13, ECF No. 80). LSI argues, however, that the forum selection clause is invalid because the Agreement is unenforceable. (LSI's Supp. for Transfer at 8, ECF No. 81).

"[B]ecause the overarching consideration under § 1404(a) is whether a transfer would promote the interest of justice, a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013) (citations omitted). Accordingly, as a preliminary

matter the Court must determine whether the Agreement—and therefore the forum selection clause—is valid.

### A. Validity of the Agreement[1]

Pursuant to Nevada law, a valid contract requires: (1) an offer and acceptance, (2) a meeting of the minds, and (3) consideration. *See, e.g.*, *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). In regard to the first criterion, a party may accept an offer by "any reasonable manner" unless specific language or conduct indicates that a particular manner of acceptance is required. *Jim L. Shetakis Distrib. Co. v. Centel Commc'ns Co.*, 756 P.2d 1186, 1188 (Nev. 1988). Indeed, "where the circumstances indicate that a particular manner of contract formation is contemplated by the parties, a binding contract is not formed in the absence of compliance with the contemplated procedure." *Id.* (citing *Widett v. Bond Estate, Inc.*, 382 P.2d 212 (Nev. 1963)).

Numerous courts have held that if a written agreement indicates that a signature is required for acceptance, its terms are not binding unless the offeree actually provides a signature. *Ergon Asphalt & Emulsions, Inc. v. Capriati Const. Corp, Inc.*, No. 2:13-cv-1683-GMN-NJK, 2015 WL 1959851, at *1 (D. Nev. Apr. 29, 2015); *Leodori v. CIGNA Corp.*, 814 A.2d 1098, 1107 (N.J. 2003) ("Defendant's own documents contemplated plaintiff's signature as a concrete manifestation of his assent . . . . Our contract law does not permit defendant to contemplate or require plaintiff's signature on an agreement and then successfully to assert that the omission of that signature is irrelevant to the agreement's validity."); *Open Sols. Inc. v. Granite Credit Union*, No. 3:12-cv-1353-RNC, 2013 WL 5435105, at *2 (D. Conn. Sept. 29, 2013) ("On the last page of the Agreement, it states, 'ACCEPTED AND AGREED TO BY OPEN SOLUTIONS, INC.,' above a blank space for OSI's signature. Had it been the intent of

---

[1] Neither party disputes that the Agreement contains a choice-of-law provision requiring that the Agreement be governed by the laws of Nevada.

the parties to not require OSI's signature, this section likely would not have been included.") (citation omitted); *Pac. Photocopy, Inc. v. Canon U.S.A., Inc.*, 646 P.2d 647, 649–50 (Or. Ct. App. 1982) ("The document was written and contained a signature line for approval by defendant. Even though paragraph 23 does not specifically require a signature of defendant's authorized agent, it appears from the character and form of the document that the parties contemplated signatures by both parties to complete the agreement."); *cf. Sky Las Vegas Realty, Inc. v. 333-CA, LLC*, No. 54759, 2012 WL 3079118, at *2 (Nev. July 27, 2012) (finding acceptance occurred in the absence of a signature where offeree "was not required to sign . . . pursuant to the plain language of the offer").

In this case, it is apparent from the language of the Agreement that SCP's signature was required for acceptance. The last page of the Agreement contains signature blocks for SCP and LSI, preceded by the statement,

> <u>*UPON SCP EXECUTION HEREOF*</u>, THIS AGREEMENT AND THE TERMS AND CONDITONS CONTAINED HEREIN SHALL BE EFFECTIVE FROM THE DATE FIRST ABOVE STATED AND UPON EITHER (a) THE EXECUTION OF THIS AGREEMENT BY PRODUCER OR (b) THE COMMENCEMENT OF PERFORMANCE BY SCP HEREUNDER WITHOUT WRITTEN OBJECTION BY PRODUCER TO THE COMMENCEMENT OF SUCH PERFORMANCE.[2]

(Agreement at 5, ECF No. 78-1) (emphasis added). The text clearly illustrates that SCP contemplated that a signature was required for the Agreement to "be effective." (*Id.*). As it is undisputed that SCP never signed the document, the Court finds that the Agreement does not

---

[2] As relevant here, Black's Law Dictionary defines "execute" as "[t]o make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form." EXECUTE, Black's Law Dictionary (10th ed. 2014).

constitute a binding contract. Thus, the forum selection clause has no effect on the Court's transfer analysis.

### B. The "Might Have Been Brought" Requirement

The Court next determines whether, in the absence of a valid forum selection clause, this case "might have been brought" in the Middle District of Tennessee. *See* 28 U.S.C. § 1404(a). A suit "might have been brought" in a district if the "plaintiff has a right to sue in that district, independently of the wishes of defendant." *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). The transferee court thus must be a proper venue and have personal jurisdiction over the defendant "when suit was instituted." *Id*. Pursuant to 28 U.S.C. § 1391(b)(1), a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Moreover, 28 U.S.C. § 1391(c) provides that a defendant corporation's residency for all venue purposes is "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."

LSI is a Tennessee corporation with its principal place of business in the Middle District of Tennessee. (*See* SAC ¶ 4). Therefore, LSI is subject to personal jurisdiction in Tennessee and venue in the Middle District of Tennessee is proper under 28 U.S.C. § 1391(b), (c). Further, the Middle District of Tennessee would have subject matter jurisdiction over the action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs, and is between citizens of different states. (SAC ¶¶ 5, 20). Accordingly, this action could have been brought in the Middle District of Tennessee.

### C. Analysis of *Jones* Factors

Having determined that this case could have originally been brought in the Middle District of Tennessee, the Court turns to the *Jones* convenience factors.

*(1) The location where the relevant agreements were negotiated and executed*

The parties do not describe where the Agreement was negotiated and executed. However, the Agreement was apparently negotiated via email (*see* Ex. G to Resp. to MSJ, ECF No. 94-7), which does not weigh in favor of either Nevada or Tennessee. *See W. Marine, Inc. v. Watercraft Superstore, Inc.*, No. C11-04459 HRL, 2012 WL 479677, at *8 (N.D. Cal. Feb. 14, 2012) ("[S]ince the contract negotiation took place entirely or nearly entirely through phone calls and emails, the court concludes that both California and Florida can be considered 'locations' where the contract was negotiated."). Further, because there are no other contracts in this case other than the unenforceable Agreement, this factor is neutral. *Multivista Franchise Sys., LLC v. Weissman*, No. 2:10-cv-02039-JWS, 2010 WL 4824170, at *2 (D. Ariz. Nov. 22, 2010) (finding "[t]he first factor . . . neutral" because "there [was] no fully executed agreement").

*(2) The state that is most familiar with the governing law*

Given the Court's finding, *supra*, that the Agreement is not enforceable, it is unclear which jurisdiction's law governs this dispute and the Court declines to speculate on this matter. Moreover, even if Nevada law does apply, federal judges are able to interpret and apply the contract law of other states. *See Operation: Heroes, Ltd. v. Procter & Gamble Prods., Inc.*, 903 F. Supp. 2d 1106, 1112 (D. Nev. 2012) ("[The second] factor therefore favors Plaintiff, but only slightly so, because this case involves a relatively straightforward breach of contract claim that a Southern District of Ohio court could no doubt adroitly adjudicate."); *Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690 (S.D.N.Y. 1994) ("The fact that the law of another jurisdiction governs the outcome of the case is a factor accorded little weight on a motion to transfer, however, especially in an instance such as this where no complex questions of foreign law are involved")). Without resolving this issue, therefore, this factor is either neutral or weighs only slightly in favor of Nevada.

*(3) The plaintiff's choice of forum*

While a plaintiff's choice of forum is normally entitled to a high level of deference, that level of deference is substantially less when the plaintiff's chosen venue lacks a significant connection to the activities alleged in the complaint. *Lou*, 834 F.2d at 739 ("If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [the plaintiff's] choice [of forum] is entitled to only minimal consideration."); *see also Editorial Planeta Mexicana, S.A. de C.V. v. Argov*, No. 2:11-cv-01375-GMN, 2012 WL 3027456, at *5 (D. Nev. July 23, 2012). Because SCP is a Nevada resident, its choice of a Nevada forum would generally be entitled to deference and weigh against transfer.[3] *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985). However, as discussed below, Nevada lacks a significant connection to the activities alleged in the SAC. Accordingly, Plaintiffs' choice of forum is not entitled to substantial deference, rendering this factor only slightly against transfer.

*(4) The respective parties' contacts with the forum*

Similarly, the fourth factor weighs only slightly against transfer. SCP is incorporated in Nevada, but its director, Steven Cohen, allegedly resides in Florida. (Decl. of Anthony DiPietra ¶ 5, ECF No. 82). Notwithstanding Steven Cohen's residence, the other parties to the case do not appear to have any contacts with Nevada. St. Paul is headquartered in Minnesota. *See Fireman's Fund Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, M.D. Tenn., No. 3:12-cv-00851 (Am. Compl.). Further, LSI is a Tennessee corporation. (SAC ¶ 4). Although LSI made payments to SCP, it did so "through an accounting firm in New York to a Nevada bank." (Pls.' Opp'n to Transfer 12:15–16). Considered in the aggregate, the parties' contacts with Nevada, if any, are minimal and only marginally weigh against transfer.

---

[3] A corporation is a citizen both of the state in which it is incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

*(5) The contacts relating to the plaintiff's cause of action in the chosen forum*

It is not clear where the contacts relating to Plaintiffs' cause of action primarily occurred. In the Tennessee Action, St. Paul has already received approval to take several *de bene esse* depositions of witnesses who reside outside the jurisdiction of the Middle District of Tennessee.[4] (LSI's Supp. for Transfer at 7–8). LSI points out that "[n]one of those witnesses reside in Nevada." (*Id.* at 8). While neither Plaintiff describes the extent to which SCP's anticipated witnesses overlap with St. Paul's, Plaintiffs draw only two connections between their cause of action and Nevada: (1) SCP's status as a Nevada corporation and (2) LSI's payments to a Nevada bank "through an accounting firm in New York." (Pls.' Opp'n to Transfer 12:14–16). Mere repetition of SCP's state of incorporation does not demonstrate a relationship between Nevada and the activities alleged in the complaint. Therefore, the only contacts with Nevada relating to Plaintiffs' cause of action are LSI's payments to the New York accounting firm. (Pls.' Opp'n to Transfer 12:15–16).

Because at least some contact relating to the present action occurred in Nevada, the fifth factor weighs against transfer. However, this factor is not accorded much weight based on the paucity of those contacts.

*(6) Differences in the costs of litigation in the two forums*

The most compelling factors are the difference in the costs of litigation in the two forums and the possibility of inconsistent results. The pending Tennessee Action involves substantially similar issues arising from identical facts. Litigating these related claims in the

---

[4] *De bene esse* depositions are essentially trial depositions used in place of a witness's live testimony pursuant to Federal Rule of Civil Procedure 32(a)(4). *See* Fed. R. Civ. P. 32(a)(4) ("A party may use for any purpose the deposition of a witness . . . if the court finds: . . . that the witness is more than 100 miles from the place of hearing or trial . . . [or] that the party offering the deposition could not procure the witness's attendance by subpoena."); *see also Youssef v. Lynch*, No. CV-11-1362 (CKK), 2016 WL 183504, at *1 (D.D.C. Jan. 14, 2016).

same tribunal would help to reduce costs, avoid duplicative litigation, and minimize the possibility of inconsistent results. *A.J. Indus.*, 503 F.2d at 389 ("[E]ven the pendency of an action in another district is important [in § 1404(a) transfer analysis] because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties."). Indeed, LSI claims that its "key witnesses reside in Tennessee," including its business manager, primary officer, and insurance broker. (LSI's Supp. for Transfer at 7). In contrast, Plaintiffs have not alleged that any of their witnesses reside in Nevada. Accordingly, this factor weighs heavily in favor of transfer.

*(7) The availability of compulsory process to compel attendance of unwilling nonparty witnesses*

Additionally, the availability of compulsory process to compel attendance of unwilling non-party witnesses weighs in favor of transfer. As discussed *supra*, St. Paul has already received approval to take several *de bene esse* depositions in the Tennessee Action. (LSI's Supp. for Transfer at 7–8). LSI points out that "[n]one of those witnesses reside in Nevada." (*Id.* at 8). Thus, litigating the action in Nevada would result in duplicating the efforts of both the parties and the court in the Middle District of Tennessee.

*(8) Ease of access to sources of proof*

Sources of proof as to the events giving rise to Plaintiffs' cause of action are located across the country. As Plaintiffs point out, the damages that SCP suffered occurred in Indiana, LSI made payments to SCP through an accounting firm in New York to a Nevada bank, LSI received notices under the Agreement in California, and SCP received notices in New York. (Pls.' Opp'n to Transfer 12:14–18; Agreement at ¶ 13, ECF No. 78-1). Further, neither party claims its sources of proof are difficult or costly to transport. *See Kida W. Holdings, LLC v. Mercedes–Benz of Laguna Niguel*, No. 3:07-cv-00523-PMP-LRL, 2008 WL 217043, at *4 (D. Nev. Jan. 18, 2008) ("[M]uch of the evidence Defendants cite is easily transported to the

District of Nevada and Defendants have not shown that they would be significantly burdened by transporting the documents."). Accordingly, the Court finds that this factor neither favors nor weighs against transfer.

After weighing each of these factors, the Court finds that many of the factors in this case are neutral at best. The factors that are most distinctive in this case are in the interests of justice, including judicial economy, and the convenience of the parties and witnesses. Here, judicial economy supports transfer because of the close similarities between this case and the Tennessee Action. As a result, consolidation of the actions is entirely feasible and is a factor to be taken into consideration in transferring venue. *See A.J. Indus.*, 503 F.2d at 389 ("The feasibility of consolidation is a significant factor in a transfer decision."). Accordingly, the Court finds that transferring this case would result in convenience for parties and witnesses and would be in the interest of justice.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that this case be transferred to the United States District Court for the Middle District of Tennessee.

**DATED** this __23__ day of March, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Judge